IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WALTER B. FIELDS, JR.,                    *
                                          *
                Plaintiff,                *
                                          *
v.                                        *
                                          *        No. 4:16CV00369-JJV
SCOTT HUFFMAN, Lieutenant,                *
Faulkner County Detention Center; *et al.,* *
                                          *
                Defendants.               *

## MEMORANDUM AND ORDER

### I.    INTRODUCTION

Walter B. Fields, Jr. ("Plaintiff"), formerly incarcerated at the Faulkner County Detention

Center, brings this action *pro se* and under 42 U.S.C. § 1983.  (Doc. No. 2.)  He claims Defendants,

officials at the detention center, retaliated against him for filing a lawsuit concerning his medical

treatment.  (*Id*. at 4.)  Plaintiff alleges Defendants prevented him from litigating his criminal case,

held his mail, removed him from the list for obtaining his GED, and threatened him with a write-up

when he asked about the GED list.  (*Id*.)  For relief, Plaintiff states he wants to "show & prove to

these people that even though I'm in jail, I still have rights."  (*Id*. at 5.)  Defendants Scott Huffman,

Terry Ropper,[1] John Randall, and Matt Rice have filed a Motion for Summary Judgment, contending

they are entitled to judgment as a matter of law on all of Plaintiff's claims.  (Doc. No. 19.)  Plaintiff

has not responded, and this matter is now ripe for a decision.  For the following reasons, I find

summary judgment is appropriate and this action is dismissed.

---

[1]The correct spelling of this Defendant's name is Terry Roper.  (Doc. No. 14 at 1.)  The
Clerk is directed to amend the docket to reflect the correct spelling.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## III.    ANALYSIS

### A.    Official Capacity Claims

First, Plaintiff has sued Defendants in both their personal and official capacities. (Doc. No. 2 at 2.) Official capacity suits "generally represent only another way of pleading an action against

an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting

*Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 690, n. 55 (1978)).  As long as

the government entity receives notice and an opportunity to respond, an official capacity suit is, in

all respects other than name, to be treated as a suit against the entity.  *Id*. at 166.  Thus, Plaintiff's

official capacity claims against Defendants are to be treated as claims against Faulkner County.

Section 1983 liability against municipalities and other local government units is limited:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels.

*Monell*, 436 U.S. at 690-91.  A municipality cannot be held liable under § 1983 on a *respondeat*

*superior* theory.  *Id*. at 691.  *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535-36 (8th

Cir. 1999).

Plaintiff has not identified any official policy or unofficial custom of Faulkner County that

caused or contributed to his alleged injuries.  Accordingly, his official capacity claims against

Defendants must be dismissed.

**B.      Personal Capacity Claims and Qualified Immunity**[2]

Qualified immunity protects officials who acted in an objectively reasonable manner and

shields a government official from liability when his or her conduct does not violate "clearly

---

[2]In their brief, Defendants argue there are no constitutional violations and that they are entitled to qualified immunity.  I elect to evaluate immunity first because qualified immunity is "immunity from suit rather than a mere defense to liability"; therefore, immunity issues should be resolved "at the earliest possible stage in litigation." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

established statutory or constitutional rights of which a reasonable person would have known."
*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law, not a question of fact.  *McClendon v. Story Cty. Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005).  Thus, issues concerning qualified immunity are appropriately resolved on summary judgment.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (the privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, courts generally consider two questions:  (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001).[3]  Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative.  *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009).  After reviewing the record, I find the facts shown, construed in a light most favorable to Plaintiff, do not establish a violation of his constitutional rights.

 Plaintiff alleges Defendants became very "hostile" toward him after he filed a lawsuit challenging the alleged denial of proper medical treatment.  (Doc. No. 2 at 4.)  He names four instances of purportedly hostile behavior:  (1) he could not "seem to get anything done" in his criminal case; (2) Defendants started holding his mail; (3) Defendants removed him from the GED

---

[3]Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 528 (8th Cir. 2009) (quoting *Pearson*, 555 U.S. at 236).

list; and (4) when he asked about the GED list, he was threatened with a write-up and told he would have to wait for an opening. (*Id*.) Plaintiff's Complaint is logically construed as stating a claim for retaliation.

Retaliatory conduct in response to the exercise of a constitutionally protected right is actionable, even if that conduct would have been otherwise proper. *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001); *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990). "Indeed, the retaliatory conduct does not itself need to be a constitutional violation in order to be actionable." *Cody*, 256 F.3d at 771; *see also Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir.1994) ("when retaliatory conduct is involved, there is no independent injury requirement"). But "[r]etaliation claims by prisoners are 'prone to abuse' since prisoners can claim retaliation for every decision they dislike." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)). So "courts must approach prisoner claims of retaliation with skepticism and particular care." *Dawes v. Walker*, 239 F.3d 489, 491 (2nd Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on his retaliation claim, Plaintiff must show:  (1) he engaged in a protected activity; (2) Defendants responded with adverse action that would chill a person of ordinary firmness from continuing in the activity; and (3) the adverse action was motivated at least in part by the exercise of the protected activity. *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). Speculative and conclusory allegations cannot support a retaliation claim. *Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (per curiam).

        1.     Lack of Progress in Criminal Case

Plaintiff states, "I can't seem to get anything done that I need for my criminal case." (Doc. No. 2 at 4.) He does not explain further. According to the affidavit of Defendant Randall, a Major

at the Faulkner County Sheriff's Office, Plaintiff made only three requests for legal materials or assistance during his incarceration. (Doc. No. 21-1 at 1.) Two of those requests were for materials relevant to his civil case, and those requests were addressed. (*Id.* at 1, 5-6.) On another occasion, Plaintiff requested a copy of Arkansas Code Annotated § 5-3-401, which defines conspiracy; he was told he must be *pro se* in order to receive such materials. (*Id.* at 1, 5.) Otherwise, Plaintiff did not request any legal materials relevant to his criminal case and did not request contact with his attorney during his incarceration. (*Id.* at 1.) The allegation that Defendants were responsible for a perceived lack of progress in his criminal case is simply insufficient to establish a claim of retaliation. Accordingly, I find no violation of Plaintiff's rights here.

        2.     Held Mail

Plaintiff alleges Defendants "started holding my mail." (Doc. No. 2 at 4.) Again, he does not explain further. According to Defendant Randall's affidavit, Plaintiff filed several grievances regarding his concern that his mail was being held. (Doc. No. 21-1 at 1.) Defendants looked into the issue, specifically by checking Plaintiff's mail log, his property, and other units of the detention center, and none of Plaintiff's mail was found to be missing or misplaced. (*Id.* at 2.)

The records of Plaintiff's requests and grievances corroborate this. On July 7, 2016, Plaintiff requested a printout of his mail history, saying he had been expecting some letters that never made it to him. (*Id.* at 4.) Defendant Huffman responded that policy did not allow him to print a history; however, he said he would check into it and asked Plaintiff when the letters were mailed. (*Id.*) Plaintiff replied with a grievance, reiterating that several letters were missing. (*Id.*) Defendant Huffman again asked for dates so that he could look into it. (*Id.*) Plaintiff did not provide dates and instead asked for the address to the United States Postal Service, which Defendant Huffman provided. (*Id.*)

On July 8, 2016, Plaintiff filed a grievance saying six letters were missing and providing information about some of them; Defendant Huffman responded he would check Plaintiff's property bag. (*Id*. at 4-5.) Plaintiff replied, "Y[ou can look but we both know they[']re not there]." (*Id*. at 5.) He stated he would be taking legal action. (*Id*.) Another official told Plaintiff he was trying to locate the items. (*Id*.)

On July 10, 2016, Plaintiff filed a grievance stating nine letters were missing, and he was told the matter was being addressed. (*Id*.) When Plaintiff inquired on July 12, 2016, he was told officials were "still working on the issue." (*Id*.) On July 15, 2016, Plaintiff stated in a grievance he would be filing charges against whomever held his mail. (*Id*. at 6.) He then asked that this grievance be ignored since he had "just talked" with an official about it. (*Id*.) On July 21, 2016, Plaintiff filed a grievance saying he needed his mail and if he did not receive it within twenty-four hours, he would be forced to take legal action. (*Id*. at 7.) Officials responded they were "looking into this situation." (*Id*.)

On August 1, 2016, Plaintiff filed a grievance saying he had proof that his mail was "being messed with." (*Id*.) Officials stated the matter had been addressed. (*Id*.) From then until he was transported to the Arkansas Department of Correction, Plaintiff filed several additional grievances, basically stating he was ready to go to prison. (*Id*. at 7-8.)

This evidence demonstrates Defendants checked into Plaintiff's repeated complaints about his mail, an official ultimately talked with him about it, and the matter was considered closed when they did not find any missing or misplaced mail. Plaintiff's allegation that Defendants held his mail in retaliation is speculative, conclusory, and unsupported by any evidence. Therefore, I find Defendants did not violate Plaintiff's constitutional rights with regard to his mail.

3.      Removal from GED List

Plaintiff alleges he was supposed to be getting his GED and Defendants took his name off

the list. (Doc. No. 2 at 4.) Evidence submitted in support of Defendants' Motion demonstrates

otherwise.

On June 13, 2016, Plaintiff filed a request to "get tested" for his GED. (Doc. No. 21-1 at 3.)

He said he had made the request twice before and had been told he would be placed on the list. (*Id*.)

Defendant Huffman responded he would place Plaintiff on the list. (*Id*.) On June 30, 2016, Plaintiff

filed a grievance saying he had not been able to do the testing because he had been "in the hole."

(*Id*.) He stated Defendant Roper had informed him he could keep his spot on the list and test when

he got out, and he asked that he be allowed to test. (*Id*.) Defendant Huffman responded Plaintiff

was not on the list for testing that day. (*Id*.) On July 4, 2016, Plaintiff filed a grievance asking if

he was on the list yet and if he would get to "start school" that day. (*Id*. at 4.) Defendant Huffman

responded he was "not approved yet." (*Id*.) Plaintiff filed a grievance on July 6, 2016, asking to

be placed on the list for GED testing for the coming Friday. (*Id*.) Defendant Huffman responded

it would be the next Friday. (*Id*.) On July 14 and 15, 2016, Plaintiff filed several grievances about

GED testing, saying he had been promised a spot on the list and continued to be bumped, having to

wait another week. (*Id*. at 5-6.) Officials responded to these grievances by saying the matter had

already been addressed. (*Id*.) On September 1, 2016, Plaintiff complained that for the third week

in a row his GED "schooling has been messed with." (*Id.* at 8.) He stated, "Every time we get told

that class has been canceled, it turns out to be a lie." (*Id*.) He was transported to prison shortly

thereafter. (*Id*.)

As this evidence shows, Plaintiff was on the list for GED testing but was not able to test on

his designated day because he was "in the hole." When he got out, it took several weeks to

reschedule.  But the matter was apparently addressed sometime around July 15, 2016, and Plaintiff

was eventually tested, as demonstrated by his later complaints about class being canceled.  His

allegation that Defendants removed him from the list in retaliation for filing a lawsuit is belied by

evidence showing the delay in testing was actually due to his being in punitive segregation.

Accordingly, Defendants are entitled to qualified immunity on this claim.

> 4.      Threat of Write-Up

Plaintiff alleges he inquired about GED testing and Defendants responded by threatening to

write him up and telling him he would have to wait for another opening.  (Doc. No. 2 at 4.)  While

the records of Plaintiff's requests and grievances, detailed above, do not include a threat of a write-

up, construing this allegation in a light most favorable to Plaintiff, he simply fails to state a claim

of constitutional magnitude.  It was not unreasonable for Defendants to tell Plaintiff he would have

to wait for another opening after he missed his designated testing day due to being "in the hole."

Nor would it be unreasonable for Defendants to warn Plaintiff that filing multiple grievances on this

topic would be punished.

Accordingly, considering his claims in a light most favorable to Plaintiff, Mr. Fields has

simply failed to show Defendants' responses constituted adverse action motivated by his filing of

a lawsuit.  Therefore, I find no constitutional violations and, therefore, Defendants are entitled to

qualified immunity.

## IV.    SUMMARY

Plaintiff's official capacity claims must be dismissed because he has not identified a policy

or custom of Faulkner County that caused or contributed to his alleged injuries.  Defendants are also

entitled to qualified immunity on Plaintiff's personal capacity claims because he has not established

Defendants took adverse action in retaliation for his filing of a lawsuit.  While I have construed the

facts in Plaintiff's favor, I am not required to accept his version of the facts if it is so blatantly contradicted by the record that no reasonable jury could believe it. *See Jones v. McNeese*, 675 F.3d 1158, 1162 (8th Cir. 2012). For these reasons, Defendants are entitled to judgment as a matter of law on Plaintiff's claims.

## V.   CONCLUSION

IT IS, THEREFORE, ORDERED that:

1.   The Clerk shall amend the docket to reflect the correct spelling of Defendant Roper's name. (Doc. No. 14 at 1.)

2.   Defendants' Motion for Summary Judgment (Doc. No. 19) is GRANTED.

3.   Plaintiff's Complaint (Doc. No. 2) is DISMISSED with prejudice.

4.   Pursuant to 28 U.S.C. § 1915(a)(3), an *in forma pauperis* appeal from this Order or the accompanying Judgment would not be taken in good faith.

IT IS SO ORDERED this 11th day of April, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE